THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREG ALAN HINZ,                                    Case No. C10-0347-JCC

              Plaintiff,                           ORDER

       v.

CITY OF EVERETT, *et al.*,

              Defendants.

       This matter comes before the Court on Defendants' Motion for Summary Judgment
(Dkt. No. 25), Plaintiff's Response (Dkt. No. 31), and Defendants' Reply (Dkt. No. 34).
Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral
argument unnecessary and hereby GRANTS the motion for the reasons explained herein.[1]

       //

_____

       [1] The Court is also in receipt of Plaintiff's Motion to Strike. (Dkt. No 32). Plaintiff
Hinz alleges that he did not consent to the jurisdiction of the Everett Municipal Court and
requests that the Court disregard the transcript and verdict in his state-court criminal
proceedings. (*Id.*) The Court need not address his (incorrect) arguments on the merits, because
his motion questions the validity of a state-court proceeding and must therefore be construed as
a collateral attack on his state-court sentence. Hinz may not bring those claims in a § 1983
action without first exhausting his state remedies. *See Heck v. Humphrey*, 512 U.S. 477, 486–
87 (1994). Hinz's Motion to Strike (Dkt. No. 32) is therefore DENIED.

ORDER
PAGE - 1

I.       BACKGROUND[2]

Plaintiff was convicted in Everett Municipal Court of obstructing a law enforcement officer. (Finding and Sentence Report (Dkt. No. 29 at 85).) The facts surrounding both his state-court conviction and this action under § 1983 are as follows. On July 21, 2009, Plaintiff was sitting in a lawn chair in an outdoor area that was part of his apartment complex when he was approached by Officer Rockwell, a police officer who was responding to a call about an assault with a weapon. (Compl. 1 (Dkt. No. 4); Trial Tr. 24–26 (Dkt. No. 26).) Rockwell testified that Plaintiff matched the call's description of the suspect, and that the lawn chair was positioned such that he was unable to see whether Plaintiff had access to a weapon, though his empty hands were visible. (*Id.* 37; Rockwell Decl. 3 (Dkt. No. 26).) Officer Rockwell, who had drawn his gun,[3] commanded Plaintiff to stand up, and Plaintiff refused. (Trial Tr. 28 (Dkt. No. 29).) Rockwell then told Plaintiff that he was investigating an incident and that Plaintiff had to comply with his commands; according to Rockwell's testimony, this was necessary in order to "secure the scene" and ensure that Plaintiff was not armed. (*Id.*) Rockwell continued his commands and Plaintiff continued to refuse to stand up unless he was under arrest; the police, more of whom had arrived by this point, then placed him under arrest for obstruction and took him into custody. (*Id.*; Compl. 4 (Dkt. No. 4).) After the arrest, the police asked Plaintiff some questions,[4] and Plaintiff twice stated, "I take the 'Fifth.'" (Compl. 4 (Dkt. No. 4).) He was

---

[2] When considering a motion for summary judgment, a court is to construe the facts in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 377 (2007). Accordingly, the facts presented herein are either uncontested or are provided by Plaintiff, with contradictions noted where appropriate. The Court gives full faith and credit to the factual findings established by the Everett Municipal Court. *See New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001); *see also* 28 U.S.C. § 1738.

[3] Officer Rockwell testified that he held his weapon in the "low ready" position, while Plaintiff alleges that it was pointed directly at him. (Trial Tr. 28 (Dkt. No. 29); Compl. 1 (Dkt. No. 4).)

[4] Officer Rockwell states in his Declaration and testified at trial that he asked Plaintiff questions relating to his identity; Plaintiff does not specify the nature of the "questioning" that he emphasizes in his complaint. (Rockwell Decl. 4 (Dkt. No. 26); Compl. 4 (Dkt. No. 4).)

1   Mirandized in the police cruiser en route to jail. (Rockwell Decl. 7 (Dkt. No. 26).) He was

2   convicted by a jury for obstructing a law enforcement officer April 5, 2010. (Finding and

3   Sentence Report (Dkt. No. 29 at 85).) Plaintiff now brings several claims for violations of his

4   civil rights against the individual officers who arrested him, the Everett Police Department, and

5   the City of Everett.

6   II.      STANDARD OF REVIEW

7          **A.  Summary Judgment**

8          Summary judgment should be rendered "if the pleadings, the discovery and disclosure

9   materials on file, and any affidavits show that there is no genuine issue as to any material fact

10  and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The

11  party seeking summary judgment bears the burden of informing the court of the basis for its

12  motion and identifying those portions of the pleadings and the relevant record that it believes

13  demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

14  317, 323 (1986). Once the moving party has satisfied this burden, judgment should be rendered

15  in its favor if the non-moving party fails to identify "specific facts showing that there is a

16  genuine issue for trial." *Id.* at 324. Summary judgment is appropriate with regard to a claim

17  that is collaterally estopped. *See Muegler v. Bening*, 413 F.3d 980, 980 (9th Cir. 2005)

18  (affirming a district court's grant of summary judgment on ground of collateral estoppel).

19         **B.  § 1983**

20         Pursuant to 42 U.S.C. § 1983, an individual may obtain relief from state actors for the

21  violation of his constitutional rights. In order to sustain a § 1983 claim, the plaintiff must show

22  that the defendant (1) acted under the color of state law and (2) deprived him of a

23  constitutional right. *See, e.g.*, *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009).

24  42 U.S.C. § 1983. Since Plaintiff is proceeding pro se, the court has a duty to construe his

25  pleadings liberally. *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001). Plaintiff's explicit

26  claims are for false arrest and false imprisonment, both of which implicate the Fourth

ORDER
PAGE - 3

1  Amendment. (Compl. 4 (Dkt. No. 4).) His filings also suggest claims that the officers violated

2  his Fifth Amendment right against self-incrimination when they continued to "question" him,

3  and that Officer Rockwell used excessive force—which implicates the Fourth Amendment—

4  when he approached Plaintiff with a drawn gun. (Compl. 4 (Dkt. No. 4); Response 1 (Dkt. No.

5  31).) Although Plaintiff did not explicitly plead those claims, the Court construes his filings

6  liberally to assume he did so.

7  III.    DISCUSSION

8          **A.      Collateral Estoppel: False Arrest and False Imprisonment**

9          The doctrine of collateral estoppel, also known as issue preclusion, provides that issues

10 of law or fact that were essential to a prior judgment, and that have already been litigated and

11 resolved, cannot be raised in successive litigation, regardless of whether the issues arise as part

12 of the same or different claims. *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001).

13 Congress has specifically required federal courts to give preclusive effect to state court

14 judgments. 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90, 96 (1980). When an individual is

15 convicted in a criminal action, probable cause for his having committed the offense is

16 definitively established; subsequent claims to which probable cause is a complete defense are

17 thus collaterally estopped. *See Compton v. Ide*, 732 F.2d 1429, 1434 (9th Cir. 1984) (holding

18 that a prior conviction estopped the plaintiff's claims of false arrest and false imprisonment

19 arising from the same incident); *cf. Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir. 1994) (stating

20 that, when a trial went forward due to a probable-cause determination at a preliminary hearing,

21 probable cause was conclusively established and the plaintiff's false arrest claim was estopped,

22 even though the guilty verdict was later reversed). Issues of fact are only collaterally estopped

23 with respect to "ultimate facts," i.e. those that were directly at issue in the earlier judgment; an

24 issue is not precluded by a prior judgment if a rational jury could have grounded its verdict on

25 a different issue. *U.S. v. Webbe*, 755 F.2d 1387, 1388 (9th Cir. 1985).

26          //

ORDER
PAGE - 4

1    In this case, Plaintiff was convicted of obstructing a law enforcement officer; this
2    conviction is sufficient to establish that the police had probable cause to arrest Plaintiff for that
3    offense. *See Compton*, 732 F.2d at 1434. Because probable cause is a complete defense to
4    claims of false arrest and false imprisonment, and because probable cause for Plaintiff's arrest
5    is already established, his claims for false arrest and false imprisonment are collaterally
6    estopped. Summary judgment, then, is appropriate.

7    Plaintiff's implicit Fourth and Fifth Amendment claims regarding self-incrimination
8    and excessive force, however, are not collaterally estopped because a rational jury could have
9    reasonably convicted Plaintiff without considering those issues. *See Webbe*, 755 U.S. at 1388.
10   The jury in Plaintiff's state court case did not make any necessary factual findings regarding
11   the position of the officer's gun or the nature of the questions Plaintiff was asked while in
12   custody. However, as discussed below, neither Plaintiff's Fourth nor his Fifth Amendment
13   claim can survive summary judgment, because Plaintiff has failed to specify any portions of
14   the record that show a genuine issue of material fact.

15   **B.      Excessive Force**

16   In support of his apparent Fourth Amendment excessive force claim, Plaintiff
17   emphasizes that Officer Rockwell pointed his gun directly at Plaintiff in his attempt to make an
18   investigatory stop. In *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002), the Ninth
19   Circuit clarified its standard concerning when an officer may reasonably point a gun at a
20   suspect during an investigatory stop (also known as a *Terry* stop). The amount of force police
21   officers use in such a situation must be "objectively reasonable" in light of the facts and
22   circumstances confronting the officer. *Id.* at 1013 (quoting *Graham v. Connor*, 490 U.S. 386,
23   397 (1989)). In making its circumstantial inquiry, a court should consider three factors (the
24   "*Graham* factors"): (1) the severity of the crime at issue, (2) whether the suspect poses an
25   immediate threat to the police or others, and (3) whether the suspect is fleeing or resisting
26   arrest. *Id.* at 1014. In order to be "reasonable" in relation to these factors, the force used must

be necessary; for example, police officers cannot use additional force against a suspect who has already been brought under control. *Brooks v. City of Seattle*, 599 F.3d 1018, 1025 (9th Cir. 2010). However, "[t]he fact that a suspect does not threaten the officer does not shield him from the use of force," and courts must "make allowances for the split-second judgments officers are required to make in tense, uncertain, and rapidly evolving situations." *Id.* (internal quotation marks omitted).

In *Robinson*, the court reversed a district court's grant of summary judgment against a § 1983 plaintiff, finding that, in light of the *Graham* factors, the plaintiff had adequately alleged a violation of his Fourth Amendment rights. *Robinson*, 278 F.3d at 1014–1015. Police officers responded to a call about a man carrying a shotgun who had shot his neighbor's dogs; when they arrived on the scene, the plaintiff, who was apparently unarmed, walked toward the officers and identified himself as the shooter. Two officers then pointed their guns directly at the plaintiff's head, and as the plaintiff put his hands in the air, the officers moved in closer until their guns were three to four feet from his head. *Id.* at 1010. The court, applying the *Graham* factors, held that the police's use of force was not reasonable because (1) the crime was only a misdemeanor, (2) the plaintiff did not appear to be armed, and (3) he approached the officers in a peaceful manner. *Id.* at 1014.

In *Brooks*, by contrast, the Ninth Circuit overturned a district court's denial of summary judgment against a § 1983 plaintiff, finding that the police had not used excessive force during her arrest. A police officer stopped the plaintiff for speeding, and she refused to sign a notice regarding the violation. She resisted when the officer attempted to arrest her, and he used a taser on her thigh, shoulder, and neck before wrestling her out of the car and taking her into custody. *Brooks*, 599 F.3d at 1020–21. The court held that the amount of force was "less than intermediate," and not excessive in light of the *Graham* factors: although (1) the crime of failing to sign the notice was not serious, (2) the plaintiff posed a threat to the officers and

ORDER
PAGE - 6

1    others "by virtue of her continued non-compliance" and (3) the plaintiff refused to obey their

2    commands. *Id.* at 1028–29.

3           This case is much more similar to *Brooks* than to *Robinson*. Officers were responding

4    to a call about an assault: a serious crime. It is uncontested that Officer Rockwell was unable to

5    determine, during the course of the investigative stop, whether the plaintiff was armed. As

6    established by Plaintiff's state-court conviction, Officer Rockwell had reasonable suspicion to

7    believe that Plaintiff was armed, and that Officer Rockwell was unable to see whether Plaintiff

8    had a weapon within reach as long as Plaintiff remained seated. In this tense and uncertain

9    situation, it was reasonable for Officer Rockwell to have drawn his gun in anticipation of

10   having to defend himself. *See Brooks*, 599 F.3d at 1025.

11          In addition, the *Graham* factors, as applied by the courts, point toward a finding that the

12   amount of force used was reasonable. First, the crime of arrest (obstructing a law enforcement

13   officer) and the crime the police were responding to (assault with a weapon) are both gross

14   misdemeanors—far more serious than the crimes at issue in either *Robinson* or *Brooks*.

15   Second, although Plaintiff did not explicitly threaten the officers, he still posed an immediate

16   threat to them because he matched the suspect's description, and because the officers were

17   unable to determine whether he was in fact armed. Again, this situation is far more serious than

18   that in *Brooks*, in which the plaintiff posed a threat merely because she refused to obey a police

19   order to sign a traffic ticket. Third, although Plaintiff ceased to resist once he was formally

20   arrested, his behavior is comparable to that of the plaintiff in *Brooks* and is in sharp contrast to

21   the peaceful and cooperative behavior of the plaintiff in *Robinson*. Assuming, then, that Officer

22   Rockwell did point his gun directly at Plaintiff during the pre-arrest encounter, this amount of

23   force was still eminently reasonable in light of the facts and circumstances confronting the

24   officer. *See Robinson*, 278 F.3d at 1013. Therefore, because the factual dispute over the

25   officer's gun is not material, summary judgment as to excessive force would be appropriate if

26   Plaintiff were to make this claim explicitly. *See* FED. R. CIV. P. 56(c)(2).

ORDER
PAGE - 7

1

### C.     Self-Incrimination

2       Plaintiff's complaint and his response to the motion for summary judgment also suggest

3  a claim that the officers violated his right against self-incrimination. The Fifth Amendment

4  provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against

5  himself[.]" U.S. CONST. amend. V. The Fifth Amendment protects citizens only from being

6  required to produce compelled testimony that is incriminating. *Hiibel v. Sixth Judicial District*

7  *Court of Nevada, Humboldt County*, 542 U.S. 177, 178 (2004). Its protections are not

8  implicated when an officer asks a person in custody for identifying information because

9  "[w]ords and actions . . . normally attendant to arrest and custody are excluded from the

10 definition of unlawful interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980); *see*

11 *also Hiibel*, 542 U.S. at 179 (stating that the disclosure of a suspect's name and identity is only

12 incriminating in unusual circumstances: for example, when "furnishing identity at the time of a

13 stop would [give] the police a link in the chain of evidence needed to convict the individual of

14 a separate offense").

15       Defendants are entitled to summary judgment on the Fifth Amendment claim because

16 they have pointed out that the record consistently shows that the officers' "questioning" of

17 Plaintiff pertained only to his identity, and because Plaintiff has failed to point to evidence

18 indicating otherwise. *See Celotex*, 477 U.S. at 323. Plaintiff alleges that, after he was taken into

19 custody, the police "continued to ask questions." (Compl. 4 (Dkt. No. 4).) However, as

20 Defendants point out, Plaintiff "does not identify exactly what type of questions Officer

21 Rockwell asked" and "[t]here is no evidence that Officer Rockwell coerced any sort of

22 confession or statement from Plaintiff. (Motion 19 (Dkt. No. 4).) Rockwell's declaration states

23 that "[t]he only questions I asked him throughout the course of the arrest were related to his

24 identity (name, address, date of birth)," and his testimony at the municipal criminal trial is

25 consistent with his declaration. (Rockwell Decl. 4 (Dkt. No. 26); *see* Trial Tr. 29 (Dkt. No.

26 29).) Plaintiff provides no facts to rebut this finding. In the absence of specific facts showing a

ORDER
PAGE - 8

genuine dispute as to the nature of the questioning, summary judgment with regard to the Fifth Amendment claim is appropriate. *See Celotex*, 477 U.S. at 324.

**D.      Qualified Immunity**

Defendants also correctly argue that, even if Plaintiff had shown the existence of a genuine issue of material fact, the officers here are entitled to qualified immunity from suits under § 1983. Even if an officer is found to have effected a constitutional violation, he cannot be held liable for it if he "could nevertheless have reasonably but mistakenly believed that his . . . conduct did not violate a clearly established constitutional right." *Saucier v. Katz*, 533 U.S. 194 (2001). A right is clearly established if it would be sufficiently clear to a reasonable officer that his actions violated that right. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

In light of the established law discussed above, a reasonable officer could not have understood Officer Rockwell's behavior—whether in arresting Plaintiff and taking him into custody, pointing his weapon at Plaintiff, or questioning him about his identity—to be unlawful. It was well within the bounds of what has been held to be reasonable behavior by a police officer.

IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. No. 25) is GRANTED. Plaintiff's Motion to Strike (Dkt. No. 32) is DENIED. This matter is DISMISSED.

DATED this 10th day of August, 2010.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 9